We'll hear the last case to be argued, Green v. Town of East Haven. Good morning, Your Honors. May it please the Court, my name is Karen King. I'm from Paul Weiss. And I was appointed by this Court to represent the appellant plaintiff, Ms. Diana Green. And in particular, to address the District Court's decision with respect to constructive discharge. I know my opponent has elected not to present oral argument, and for my part I'll try to keep it short. I think the issues are actually fairly straightforward. This is a decision on a motion for summary judgment. The facts, inferences, and ambiguities must be construed in Ms. Green's favor. And the standard for constructive discharge is well established. The question is whether the working conditions were so difficult and unpleasant that a reasonable person in her shoes would have felt compelled to resign. And what a reasonable person would feel in her shoes is fundamentally a question for the fact finder. And this is not a case where there is a complete absence of facts supporting the allegations that Ms. Green was subject to intimidation, to unfair treatment, to targeting, and that she had a very difficult and unpleasant working condition. And I think that alone would necessitate a reversal. I thought she resigned in order to avoid going through the disciplinary hearing. Right, she did resign. It doesn't seem as if she found her working conditions intolerable. She was about to bake biscuits for everybody. Right. Part of what culminated into this ultimate aggravated situation is the entire biscuits investigation, which led her to resign on the eve of her lateral hearing. I think the facts in this case show that she was targeted, that the reaction of the chief of police and the police department, the internal affairs officer that investigated, was disproportionate to the activities that had happened. And that, I think, contributed to her feeling of being targeted and unfairly treated by her supervisors. And what the district court ended up doing was following a line of cases that have been percolating at the district level, saying that if you have a pre-termination administrative process, that an employee cannot claim constructive discharge unless they follow through with that process, unless they can show that it was predetermined or prejudged. And I would just start by noting that this is something that the district courts, certain district courts, have started following. I don't think it's grounded in a decision from this court. And I think that this court does not need to embrace this standard, which is a bit rigid and, I think, too restrictive for the employees. But this court doesn't need to reach that question. In most constructive discharge cases, the work conditions are so bad that the employee says, I can't take any more, I'm going to leave. Here, I don't know, is there anything in the record to suggest that she was having a very difficult time even before this? Or is it that she decided, I don't want to face a termination hearing, I think I'm going to lose and, therefore, I'm going to quit? I mean, does it matter in terms of the analysis? Yes, she has alleged that since 2012, when there was a change in senior management at the police department, that she was subject to ongoing unfair treatment, intimidation, bullying, being isolated. She alleged that the new clerk, who was much younger, was getting favorable assignments, favorable work schedules, the training opportunities. Was this below or was she arguing primarily, I knew I was going to get fired and, therefore, I quit? She did argue it. I mean, she alleged in her complaint and she did argue below that there was a sort of pattern of this type of behavior that culminated in this so-called biscuits investigation that led her to resign. I mean, there's no doubt that she did resign on the eve of the Loudermill hearing and, obviously, that was prompted by what she felt was an impossible situation where she would be terminated. But I just don't want it to be lost that there was a backdrop to this. It was not just out of the blue. She didn't like the fact that she wanted different hours, but the hours that she got were only differed by one hour, didn't they? Yes, she wanted to start earlier. How does that rise to some kind of egregious? It's just one piece of a larger pattern, and I agree. She had to ask permission for two hours to get two hours off, right? After a holiday, I think she had asked for what was customary granted to the senior. She deemed herself the senior clerk as opposed to the junior clerk, but there was no formal office policy with regard to that, was there? That is true. She was relying on the custom. It was a kind of a perception that she had as opposed to some kind of formal relationship that had been altered as a result of when she aspired to that position. It is true that there was no official policy that was being violated and that the defendants are clearly saying that there was no requirement that she be given that extra consideration. She's relying on the fact that in past practice, this was typically given to the more senior person. But it's not just the hours. It was also the training opportunities that were all given to the junior clerk and the choice assignments, being told that she was too slow, being criticized, being written up for things like talking about her colleagues as if the gossip was something that she needed to be disciplined for. So it's not just the hours. I just want to make that clear. Is it the plaintiff's position that the inevitability of being fired, she knew she was going to be fired, that that by itself is enough for constructive discharge? Yes. Under the construct of the availability of a pre-termination administrative process, the cases all say that if you have a reasonable belief that it was inevitable, that you can still bring a constructive discharge claim and survive the summary judgment. And here, I think the district court just got it wrong because there was . . . The record indicates that if she was fired, ultimately at the end of the process, she would lose her pension and other benefits? I think there's something in the record where she believed that she would lose her pension and benefits. There was also . . . By resigning when she did, did she preserve pension and benefits? I don't believe that she lost her pension benefits in the end. I don't think that's in the record that that happened. There were also criminal charges that were being threatened. She did not have a direct threat that she was being brought up on charges, but the record is clear that the police department was considering bringing up charges. The argument that threatening criminal prosecution for taking a can of biscuits is pretext? Yes. I mean, yes. It seemed a bit over the top. I wish the village were here. What's that? It did seem a bit over the top. Disproportionate, for sure. Crime scene tape. Yeah, crime scene tape over the refrigerator, being told that she had violated federal laws and she was stealing. I mean, there's definitely enough here in the record for her to believe that this was a setup. And I just want to point out that the district court said there was no basis to prejudge the decision makers, but in fact, there was a conversation between the town and her union rep, where the town told her, through the rep, that they were not interested in hearing from her. And for the town, the employer, who's supposedly going to hold a louder mill hearing, to say, we don't want to hear from you, I think that is enough of a factual basis to say that the decision makers were, in fact, biased. Wasn't there an additional step in front of the commissioner? Yes. The district court and the defendants point out that there was a second tier, the board of police commissioners. The record here has Ms. Green just feeling that there was a process and not distinguishing, and no one had distinguished for her that there was a two-step process. The district court said that a reasonable person would not have concluded that it was inevitable, because there was this board of police commissioners. But I would submit that the idea that a reasonable person in her shoes, having been told that the town doesn't want to hear from her, having been told that the chief of police thinks that she's stealing from the government and that she needs to be. He's not the decision maker. He's not, but it's a group of factors. And the board of police commissioners appoints the chief of police. But, I mean, our case law generally says that where you have a constructive termination like this, that normally the die is cast because the decision maker is the one who's telling you this is not going to go well for you. That's not what this case is. She did not reach the board of police commissioners. There's nothing in the record to suggest that she even was aware that there was a second step. But I would suggest that everything taken together with the town telling her directly that she was going to lose, and the fact that the board of police commissioners, by definition, is more likely and logically for a reasonable person to assume, would favor the chief of police, the internal affairs police officer, against a records clerk. The power dynamic here is one where she could reasonably, and a reasonable person could conclude, that the die was cast. And so, ultimately, I think the district court has usurped the role of the fact finder by concluding that a reasonable person would not have reached that conclusion. And that's why the summary judgment dismissal ought to be reversed. Thank you. And thanks to you and your firm for taking on the case. We'll reserve decision. The final case is on submission. I'll ask the clerk to adjourn. Thank you very much.